UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK NATIONAL ASSOCIATION,

    Plaintiff/Counter-Defendant,

v.

    Case No: 15-10112
    Hon. Victoria A. Roberts

LAND CONTRACTS UNLIMITED, INC.,
ALVIN B. BRIGHT, JR., and
CATHERINE R. HUNT-BRIGHT,

    Defendants/Counter-Plaintiffs
_____/

**ORDER GRANTING PNC BANK'S MOTION TO DISMISS COUNTS I AND II
OF AMENDED COUNTER-COMPLAINT [DOC. #32]; GRANTING PNC BANK'S
MOTION TO STRIKE JURY DEMAND [DOC. #31] AND DENYING
JOINT MOTION TO AMEND SCHEDULING ORDER [DOC. #42]**

**I.**    **Introduction**

Plaintiff PNC Bank ("PNC") alleges default on a mortgage note by defendant Land Contracts Unlimited, Inc., ("LCU") and failure to pay the debt by individual guarantors Alvin B. Bright, Jr., and Catherine R. Hunt-Bright (collectively the "Brights"). Two motions are before the Court: (1) PNC's Motion to Dismiss Counts 1 and 2 of Amended Counter-Complaint; and (2) PNC's Motion to Strike Jury Demand.

The Motions involve three documents executed by the Brights and/or LCU. The first document is a Small Business Equity Line of Credit Agreement (the "Note") signed by the Brights as LCU officers. The second and third documents are a guaranty, page 7 of the Note ("Guaranty"), signed by the Brights individually, and a mortgage dated November 9, 2004 (the "Mortgage") for real property located at 7566 N. Hix Road, Westland, MI 48185 (the "Property"). The Brights signed the Mortgage.

The Note and Mortgage contain jury waiver provisions; the Guaranty does not. The central issue raised by the Motion to Strike Jury Demand is whether the Mortgage jury waiver provision is broad enough to cover claims arising from the Guaranty. PNC says that it is; the Brights disagree. PNC filed a three count Second Amended Complaint: (Count I) Breach of Note by LCU; (Count II) Breach of Guaranty by the Brights; and (Count III) Breach of Mortgage by the Brights.

Defendants' Answer demands a trial by jury. They filed a First Amended Counter-Complaint ("Counter-Complaint") alleging: (Count I) Promissory Estoppel; (Count II) Fraud in the Inducement; and (Count III) breach of provisions of the Note. They request trial by jury on the Counter-Complaint as well.

The Court **GRANTS** PNC's Motion to Dismiss Counts I and II of the Counter-Complaint, making it unnecessary for the Court to determine if the jury waiver pertains to those claims by LCU and the Brights.

The Court also **GRANTS** PNC's Motion to Strike Jury Demand. The jury waivers in the Note and Mortgage are enforceable and pertain to any claim under the Guaranty.

**II.   Background**

PNC, successor to National City Bank and National City Bank of the Midwest ("PNC"), loaned $400,000 to LCU under a Small Business Equity Line of Credit Agreement (the "Note"). The Brights signed the Note as officers of LCU and guaranteed it in their individual capacities.

Repayment of the Note was also guaranteed by the Mortgage on the Property which the Brights signed.

There was a fire on the Property and PNC says Defendants did not notify PNC or

repair the Property as required by the Mortgage. PNC says this failure to comply with Mortgage terms triggered default. On December 29, 2014, PNC advised Defendants by letter that it was accelerating payment under the Note and demanded payment from LCU by January 3, 2015. LCU failed to repay the loan. This lawsuit followed.

Defendants say during the loan approval process and subsequently, PNC representatives repeatedly assured and represented that the Note would be renewed when it became due. Defendants say PNC examined their business model and knew that the loan was being used to purchase property that would be sold on land contracts for longer terms than the term of the Note. Defendants say that despite assurances otherwise, PNC declared a default under the Note, the Guaranty and the Mortgage, and sued.

### III. Motion to Dismiss

PNC says the Note's Maturity Date was November 9, 2014 and renewal or extension was at its sole discretion. PNC also says the Note contains a provision allowing PNC to terminate the account by written notice to LCU with or without cause.

PNC says Counts I and II of the Counter-Complaint are barred by the Statute of Frauds, and Count II is additionally barred by the economic loss doctrine and failure to state a claim.

#### A. Count I: Promissory Estoppel

##### 1. Statute of Frauds

Count I of Defendants' Counter-Complaint says PNC made "clear, definite and unambiguous promises and representations" to extend the November 9, 2014 maturity date of the line of credit and not declare default under the Mortgage or Note so long as

3

payments were made on time.

To state a claim for promissory estoppel LCU and the Brights must allege: (1) a promise, (2) that the promisor should reasonably have expected to induce action on the part of promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Ardt v. Titan Ins. Co.*, 233 Mich. App. 685, 692 (1999).

PNC says the Michigan Statute of Frauds requires claims of this type against a financial institution to be in writing, and LCU and the Brights have no writing to substantiate PNC's alleged promise. M.C.L. §566.132(2) provides, in part:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation

LCU and the Brights respond to this argument by stating PNC's promise to renew or refinance is in writing. They direct the Court to the following provision of the Note:

(1) Line of Credit

The Account is an open-end line of credit which may be used to obtain loans ("Advances") from time to time for a period of ten (10) years. The Account will mature on the last day of the billing cycle ending in November 9, 2014 ("Maturity Date"). If Borrower continues to meet Lender's then current credit and collateral value criteria, at Lender's discretion, Lender will either extend the Maturity Date or Lender will refinance the Account on the terms than being offered by Lender

for such Accounts.  If the Account is not renewed or refinanced, Borrower shall repay any outstanding balances during the Repayment Period set forth in section 6(c) hereof.

While this provision does set forth conditions for renewal or refinancing, importantly, renewal or refinancing is at the sole discretion of PNC; PNC does not promise that renewal or refinancing will be extended if LCU meets certain financial criteria.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A complaint "must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation omitted).

LCU and the Brights fail to state a claim for promissory estoppel because the Note provision they direct the Court's attention to is neither a promise nor commitment to renew or refinance the Note; the provision contains the qualification that renewal is at the Lender's discretion.

LCU and the Brights also say that even if the Statute of Frauds applies, it does not preclude a counter-claim for promissory estoppel. While it is true that estoppel and promissory estoppel are "equitable loopholes" developed to avoid unjust results by an "overly mechanistic application" of the Statute of Frauds, *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 365 (1982), the case cited by LCU and the Brights is distinguishable. In *Opdyke*, the court held that a sworn complaint, affidavits, and other documentary evidence raised a genuine issue of fact as to whether a letter was intended to be a binding contract. *Id.* at 368. The only writing LCU and the Brights provide is the provision cited above; they do not supply any other writing signed with an authorization from PNC, that was a promise or commitment to renew or refinance.

LCU and the Brights also argue the Statute of Frauds does not apply since they are not seeking to enforce an oral agreement, but seek only to obtain compensatory damages. They rely on *Monroe Bank & Trust v. Jessco Homes of Ohio, LLC*, No. 07-12073, 2009 WL 349514, at *2 (E.D. Mich. Feb. 10, 2009).

In *Monroe*, the Statute of Frauds did not apply to a counterclaim to rescind a note and guaranty based on alleged misrepresentations by a lender that the borrower knew the loan did not contain an interest carry provision. *Id.* *Monroe* does not save the claim here; LCU and the Brights do not seek to rescind the loan nor do they only seek compensatory damages.

Count I of the Counter-Complaint requests judgment against PNC requiring it "...to perform its promises, representations and agreements..." *First Amended Counter-Complaint*, Dkt. 25, ¶ 20. This request for relief - to enforce a promise by a financial institution to extend the maturity date of the Note or refinance - falls squarely within M.C.L. §566.132(2).

Finally, LCU and the Brights say to the extent the Court believes promissory estoppel would be more appropriate as an affirmative defense, they request this claim be redesignated as an affirmative defense under Fed. R. Civ. P. 8(c)(2) and Fed. R. Civ. P. 8(e).

Rule 8(c)(2) provides that if a party mistakenly designates a defense as a counterclaim, or vice versa, the court must treat the pleading as though it were correctly designated. Rule 8(e) says pleadings must be construed so as to do justice.

In support, LCU and the Brights cite only *Wachovia Bank, N.A., v. Dresdner (In re Brookland Park Plaza, LLC)*, 2009 Bankr. LEXIS 3241, *13-15 (Bankr. E.D. Va. 2009), a case by the United States Bankruptcy Court for the Eastern District of Virginia. *Wachovia Bank* considered whether the Virginia General Assembly intended to distinguish between the right to raise an affirmative defense and the right to bring an action to enforce an agreement when it amended the Virginia Statute of Frauds. This case is unhelpful in reviewing the Michigan Statute of Frauds and the Court declines to redesignate the promissory estoppel claim as an affirmative defense.

PNC's Motion to Dismiss Count I of the Counter-Complaint is **GRANTED**.

### B.   Count II: Fraud in the Inducement

PNC says Count II should be dismissed because any oral promise to renew or

refinance is barred by the Statute of Frauds. PNC says this claim also fails under the economic loss doctrine and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

To establish fraud in the inducement, a party must show: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243 (2006).

Future promises ordinarily do not constitute fraud because they are contractual in nature, but there is an exception for promises made in bad faith without intention of performance. *Hi-Way Motor Co v. Int'l Harvester Co*, 398 Mich. 330, 336-338; 247 NW2d 813 (1976). The evidence of fraudulent intent must relate to conduct at the time that the representation was made or almost immediately thereafter. *Hi-Way Motor Co*, at 338-339.

The Counter-Complaint fails to set forth sufficient facts for each element of a fraud in the inducement claim. LCU and the Brights fail to plausibly support their assertion that PNC made a false material representation. Although they allege PNC promised to renew or refinance the Note, the only writing they provide contains a qualification that such a decision is subject to the lender's discretion; any oral promise to renew the loan is barred by the Statute of Frauds.

The Court need not decide whether the economic loss doctrine applies.

PNC's Motion to Dismiss Count II is **GRANTED**.

**IV.	Motion to Strike Jury Demand**

PNC says Defendants' jury demands should be struck because two of the loan documents contain valid jury waivers and the Mortgage jury provision is broad enough to cover causes of action arising from the Guaranty.

In the context of an express contractual waiver, the court starts with a presumption of validity and the objecting party has the burden to demonstrate its consent to the waiver provision was not knowing and voluntary. *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (1985).

While the brief was filed on behalf of all Defendants, LCU has not met this burden. The Brights are the only ones who respond substantively to PNC's Motion to Strike the jury demand. LCU accordingly waived any argument regarding the validity of the jury waiver provision in the Note. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The Brights say the Mortgage is vague, ambiguous and riddled with errors such that the jury waiver in it could not have been knowingly and intentionally made by the Brights and that the jury waiver in the mortgage is so broad as to make it meaningless.

While the Brights allege the waiver was not knowing and voluntary, and cite to *JP Morgan Chase Bank, NA v. Winget*, 639 F. Supp. 2d 830, 834 (E.D. Mich. 2009), they discuss none of the factors courts must examine to determine whether the waiver was knowing and voluntary. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420-21 (6th Cir. 2011) ("(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including

9

whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.").

Aside from conclusory statements, the Brights fail to demonstrate their consent to the Mortgage waiver was not knowing and voluntary. The jury waiver provision is in bold lettering and the Brights fail to point to any specific error.

The Court granted PNC's Motion to Dismiss Counts I and II of the Counter-Complaint, so the only Count remaining in the Counter-Complaint is LCU's claim that PNC breached the Note; there is no contest that this Count will be tried without a jury. Count I of PNC's Second Amended Complaint is for Breach of Note by LCU and Count III is for Breach of Mortgage by the Brights. Both of these will be tried without a jury. The only cause of action left which arguably may entitle the Brights to a jury trial is Count II of PNC's Second Amended Complaint, Breach of Guaranty by the Brights.

The Brights say the waiver in the Mortgage should not apply to the alleged breach of the Guaranty because the Guaranty does not contain a waiver provision and the waiver provision in the Note doesn't apply to them.

The issue of whether the Brights have a right to a jury on this claim turns on whether the two jury waivers in the related documents extend to claims arising from breach of the Guaranty. The Court finds that they do.

Page 12 of the Mortgage contains a jury waiver:

Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

Page 5 of the Note contains a jury waiver as well:

10

(18) JURY WAIVER
BORROWER HEREBY, AND EACH HOLDER OF THIS AGREEMENT, BY TAKING POSSESSION THEREOF, KNOWINGLY AND VOLUNTARILY WAIVES THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER WRITING RELATED TO THIS AGREEMENT.

The language of the jury waiver in the Mortgage is broad. It applies to "any action, proceeding or counterclaim brought by any party against any other party."

The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in a civil case where legal rights are asserted. U.S. Const. amend. VII; *Golden v. Kelsey–Hayes*, 73 F.3d 648, 659 (6th Cir.1996). In a case where the Court has diversity jurisdiction, the question of one's right to a jury trial, even where that right has been addressed through a contractual provision, is governed by federal law. *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc.*, 528 F.Supp.2d 710, 712 (E.D.Mich.2007) (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d at 755). Parties to a contract may waive the right to jury trial. *K.M.C. Co.*, 757 F.2d at 755. A contractual provision for waiver of jury trial will be enforced but it will be strictly construed. *JP Morgan Chase Bank v. Winget*, 639 F.Supp.2d 830, 834 (E.D.Mich.2009). A waiver will be enforced only if it was knowingly, intentionally and voluntarily made. *K.M. C. Co.*, 757 F.2d at 755.

The Note, the Guaranty and the Mortgage are interconnected. The breach of the Mortgage prompted the acceleration of the debt owed under the Note. LCU's failure to pay the Note triggered the Brights' responsibility under the Guaranty. The claims that arise from the three documents are also connected. The Note was secured by both the Guaranty and the Mortgage. Each of the causes of action asserted by PNC are in some

way connected to the debt owed under the Note.

Other courts which considered the issue of multiple, related documents and jury waiver provisions in some but not all documents, reached similar conclusions based on the interconnectedness of the documents and subsequent claims. See, *Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248, 250, 588 N.E.2d 705, 707 (1992).

*Chase* involved similar facts. The bank loaned money to a corporation. The loan and security documents both contained a jury waiver and were signed by one of the defendants in his capacity as president of the corporation. *Chase Commercial Corp. v. Owen*, 32 Mass. at 249. The guaranty agreement was signed by both defendants individually. *Id*. Both the loan and security documents contained jury waiver provisions; the guaranty did not. *Id*. Defendant president argued he were not bound by the jury waiver provision because, except for signing in a representative capacity as president of the corporation, he did not sign the agreements that contained the waivers. *Id*. at 250. Both defendants also argued the guaranty did not incorporate the entire loan and security agreements by reference. *Id*. Nonetheless, the court held that defendants waived their right to a jury trial on all claims relating to the transaction because the three documents were in essence one transaction and must be read together to effectuate the intent of the parties. *Id*. All three documents were signed at the same time and the guaranty made reference to the other agreements. *Id*. at 251.

See also, *PNC Equip. Fin., LLC v. Aero Toy Store, LLC*, No. 12-CV-236, 2012 WL 3544660, at *5 (S.D. Ohio Aug. 16, 2012) (citations omitted) (jury waiver applied to counterclaim where it was "inexorably linked to the Loan Documents and Guaranties at issue" in the case); *Fort Henry Mall Owner, LLC v. U.S. Bank N.A.*, No. 11-CV-287,

12

2012 WL 523657, at *1 (E.D. Tenn. Feb. 15, 2012) (jury waiver enforced because all acts complained of arose out of the defendants' action or inaction in abiding by the terms of documents that contained waiver provisions).

Although the Brights contend the Guaranty is a separate document, the Guaranty has the heading "Small Business Equity Line of Credit Agreement (MI)." This same heading appears on every page of the Note and the Guaranty is attached to the Note as page 7, indicating a continuance of the Note numbered pages 1 through 6. There is no indication the Note and the Guaranty were signed on separate days. Additionally, the Guaranty references the Note and approves all of its provisions:

> For value received, the undersigned ("Guarantor") jointly and severally guarantees the prompt payment of the indebtedness evidenced by and arising under the above Agreement when each payment becomes due, and approves all the provisions of the above Agreement."

Dkt. 16, Exhibit 3 at p. 7.

The essential dispute between the parties arises from three documents and the Defendants' collective failure to pay money owed under the Note. On the facts presented, the cause of action under the Guaranty falls within the jury waiver in the Mortgage. Additionally, the Guaranty is sufficiently linked to the Note that those documents must be read together as well.

PNC's Motion to Strike the Jury Demand is **GRANTED**.

V. **Conclusion**

The Court **GRANTS** PNC's Motion to Dismiss Counts 1 and 2 of the Counter-Complaint.

The Court **GRANTS** PNC's Motion to Strike Jury Demand. The jury waiver in the

Note and Mortgage are enforceable and the jury waivers in the Mortgage and Note pertain to any claim under the Guaranty. If this case proceeds to trial, the claims in PNC's Second Amended Complaint and Count III of Defendants' First Amended Counter-Complaint will be tried without a jury.

The Court also **DENIES** the Joint Motion to Amend the Scheduling Order.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 8, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 8, 2015.

s/Linda Vertriest
Deputy Clerk